IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>RORY MAYNOR, )<br>)<br>    Defendant. ) | Case No. 10-30003 |

OPINION

RICHARD MILLS, United States District Judge:

Rory Maynor has filed an amended motion for compassionate release.

I.   BACKGROUND

Defendant Rory Maynor seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Defendant, a 51-year old white male, pled guilty in August 2010 to manufacture of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and was sentenced to 188 months of imprisonment followed by 6 years of supervised release. The Defendant has been in custody since December 10, 2009, and has a projected release of March 17, 2023. The Defendant will be eligible for placement in a halfway house in September 2022.

The Defendant has an extensive criminal history and was sentenced as a career offender. Some of that criminal history can be attributed to his long history of substance abuse. He committed the federal offense while on probation for other crimes. The Government states that Defendant has been classified by the Bureau of Prisons ("BOP") at a high risk recidivism level. It is worth noting that Defendant has had no disciplinary infractions while in custody.

The Defendant states that he has hypertension and degenerative heart disease. Based on that along with conditions at FCI Milan, where the Defendant is serving his sentence, the Defendant claims he has presented extraordinary and compelling reasons warranting compassionate release. The Government contends the Defendant has not presented extraordinary and compelling reasons that would justify compassionate release.

According to the Bureau of Prisons ("BOP") website, 137 inmates and two BOP staff members have died of COVID-19. www.bop.gov/coronavirus (last accessed November 12, 2020). There are 2,894 federal inmates and 997 BOP staff who are currently positive for COVID-19. *Id*. Currently, 17,107 inmates and 1,592 staff have recovered. *Id*. There are 125,304 inmates at BOP-managed institutions, along with approximately 36,000 BOP staff. *Id*.

FCI Milan has no inmates and three staff members who are currently positive for COVID-19. *Id*. There have been three inmate deaths due to COVID-19. *Id*.

The website reports that 86 inmates and 55 staff members have recovered. *Id*. FCI Milan has 1,238 inmates. www.bop.gov/locations/institutions/mil (last accessed November 12, 2020).

## II. DISCUSSION

### (A)

Under the First Step Act signed into law by President Trump on December 21, 2018, defendants are now authorized to file motions for compassionate release after first exhausting administrative remedies within the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). The law provides the sentencing judge with jurisdiction to consider a defense motion for reduction of sentence based on "extraordinary" or "compelling" reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]." *See* 18 U.S.C. § 3582(c)(1)(A).

The Defendant's motion represents that he made a request for compassionate release in writing to the Warden of his facility more than 30 days before filing his motion. The Government states there is no record that Defendant submitted a request for compassionate release. For purposes of this motion, the Court will assume that Defendant has met the statutory exhaustion requirement.

The Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The First Step Act does not say what "extraordinary and compelling reasons" warrant a sentence reduction, but the compassionate release statute directs the Court to consider the sentencing factors of 18 U.S.C. § 3553(a) when deciding compassionate release motions. *See* 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Guideline policy statement has not been updated since passage of the First Step Act to reflect that defendants (and not only the BOP) may move for compassionate release but courts have turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *See United States v. Weatherspoon*, 2020 WL 3803035, at *3 (S.D. Ind. July 7, 2020) (citations omitted). The applicable guideline instructs that the Court should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release and the Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act. *See* U.S.S.G. § 1B1.13. The policy statement provides examples of "extraordinary and compelling reasons" in the application notes. These examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, or (4)

compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1 (A)-(C). It would not appear that Defendant can meet these "extraordinary and compelling reasons" which would warrant release.

The commentary also includes a fifth catch-all provision for "extraordinary and compelling reasons other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the Bureau of Prisons. The policy statement was last updated in November 2018 before the First Step Act was passed.

On April 3, 2020, the Attorney General made the finding that emergency conditions are materially affecting the functioning of the BOP, thereby allowing the BOP Director to review all inmates for home confinement. The Attorney General's Memorandum explained that "inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19 is materially affecting their operations." There have been calls from legal experts for the Attorney General to expand the home confinement program even further. Moreover, multiple United States Senators have recently voiced concern over BOP's attempts to curb the spread of the virus and their non-responsiveness to the call to release medically vulnerable inmates.

(B)

Certainly, the COVID-19 pandemic is in and of itself an extraordinary and unprecedented event in our lifetimes. "The spread of the novel coronavirus, more specifically COVID-19, has presented extraordinary and unprecedented challenges for the nation and poses a serious issue for prisons." *United States v. Coles*, 2020 WL 1976296, *6 (C.D. Ill. Apr. 24, 2020). BOP's infection rate is significantly higher than that of the United States and it also surpasses infection rates around the world. However, "the mere existence of COVID-19 in society and possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). "Perhaps a prisoner could satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020); *see also United States v. Johnson*, 2020 WL 2573239, at *4 (C.D. Ill. May 21, 2020).

If extraordinary and compelling circumstances are established, the Court should then consider the statutory sentencing factors. Under *Pepper v. United States*, 562 U.S. 476, 490-493 (2011), the Court should also consider any applicable post-offense developments under § 3553(a).

In support of the motion, the Defendant states that on at least one occasion in April 2020, a correctional officer at FCI Milan who had tested positive for COVID-19 was told by the administration to return to work without observing a 14-day quarantine as recommended by the Centers for Disease Control and Prevention ("CDC"). Because of the questionable judgment of the FCI Milan administration, the Defendant claims he is in jeopardy. He has served over 130 months out of 188. The Defendant has taken a number of rehabilitation classes while incarcerated so that he will be better equipped to succeed upon his release.

The Defendant claims that this case presents extraordinary and compelling reasons warranting compassionate release. He states that his hypertension presents an unreasonable risk of illness. Moreover, allowing the motion would result in an individual who has been in custody nearly 11 years simply receiving a couple of years off in order to significantly add to his safety, to the safety of other inmates and to the safety of the community. The Defendant states that the lengthy sentence—by far the longest he has ever served—has chastened him.

Hypertension has been identified by the CDC as a chronic health condition that might place him at increased risk should he contract COVID-19. www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions (last visited November 12, 2020). The Defendant's most recent medical records state that he "[a]ppears [w]ell, [a]lert, and [o]riented." The

treatment for hypertension includes lifestyle changes (exercise, loss of weight, etc.) and medication.  The Defendant reports that he runs most days or uses the stair climber.  He takes medication daily for hypertension.  The Defendant once had an atrial fibrillation but was "cardioverted" two years ago, meaning he had a procedure to restore a normal heart rate.  [www.mayoclinic.org/tests-procedures/cardioversion/about/pac-20385123](www.mayoclinic.org/tests-procedures/cardioversion/about/pac-20385123).  His most recent medical records state that his heart rate has been normal since.  There is no indication that Defendant suffers from degenerative heart disease.

Based on the number of individuals who have recovered from COVID-19, it would appear that FCI Milan at one time at least had a relatively serious outbreak.  However, the situation at FCI Milan appears to be currently under control.

The Defendant's hypertension alone does not constitute an "extraordinary and compelling" reason to grant compassionate release.  The Court recognizes that the COVID-19 pandemic is a very serious circumstance throughout the United States and the world.  Moreover, individuals who are incarcerated do not have the same ability as others to take measures to limit the risk from COVID-19.  However, the Court trusts that FCI Milan has learned from its decision regarding the correctional officer and is taking every possible precaution.

The Court further notes that Defendant has served the bulk of his sentence and appears to have made significant progress in those 11 years. To this credit, the Defendant has had no disciplinary infractions while in custody and his work assignment is with UNICOR. While this progress is certainly commendable, the Court is unable to conclude it constitutes an "extraordinary and compelling" circumstance that warrants compassionate release.

<u>Ergo</u>, Defendant Rory C. Maynor's Amended Motion for Compassionate Release [d/e 36] is DENIED.

The Clerk will terminate the Defendant's Pro Se Motion for Compassionate Release [d/e 32].

ENTER: November 12, 2020

    FOR THE COURT:

                            /s/ *Richard Mills*
                            Richard Mills
                            United States District Judge